IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:21-cr-00019-3 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| DERRICK A. THOMPSON | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Derrick A. Thompson, along with two co-defendants (William Riley Stump and Justin Wayne Johnson), was charged in a multi-count indictment with several offenses relating to the theft of timber from the Bluestone Dam Project ("Bluestone") managed by the United States Army Corps of Engineers ("USACE"). (Dkt. No. 3.)[1] Stump pled guilty to one count of the indictment (Dkt. No. 77), and the court severed Johnson because he had not yet been arrested (Dkt. Nos. 33, 42). Thompson, however, pleaded not guilty and proceeded to trial. (Dkt. No. 18.)

On November 10, 2022, the jury found Thompson guilty of only one count (Count One)—which charged him with a multi-object conspiracy to steal timber, violate the Lacey Act, 18 U.S.C. § 3372(a)(1), and remove timber from public lands, all in violation of 18 U.S.C. § 371—and found him not guilty on Counts Two, Seven, and Twelve. (Dkt. No. 101.)

Before the court is Thompson's renewed[2] motion for judgment of acquittal or, in the

[1] Prior to trial, the court granted defendants' joint motion to dismiss Counts Seventeen through Nineteen. (Dkt. No. 49.)

[2] On November 10, 2022, at the close of the government's case-in-chief, Thompson orally moved for judgment of acquittal pursuant to Rule 29(a); the court reserved decision on the motion. *See* Fed. R. Crim. P. 29(b). Thompson elected not to put on any testimony or evidence and then renewed his Rule 29 motion; the court again reserved decision. *Id.* Days after the jury found him guilty on Count One, Thompson filed another renewed motion for judgment of acquittal and incorporated by reference the arguments made at trial. Although the court must decide a Rule 29 motion "on the basis of the evidence at the time the ruling was reserved," *see* Fed. R. Crim. P. 29(b), because Thompson did not put on any evidence or testimony after making his first motion, the trial record is the

alternative, a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. (Dkt. No. 95.) After argument at trial and subsequent briefing, the motion is ripe for resolution. For the reasons stated herein, Thompson's motion will be denied.

## I. DISCUSSION

**A. Standard of Review**

Thompson first moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. That rule provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant challenging the sufficiency of the evidence faces a heavy burden." *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (internal quotations omitted). Specifically, "[t]he jury's verdict must stand unless [the court] determine[s] that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Royal*, 731 F.3d 333, 337 (4th Cir. 2013) (citing *Young*, 609 F.3d at 355). Put differently, the motion should be denied if there is "substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996).

Alternatively, Thompson moves for a new trial. Pursuant to Federal Rule of Criminal

---

same now as it was then. Accordingly, the court's ruling herein collectively addresses all three motions for judgment of acquittal.

Procedure 33, the court, upon the defendant's motion, may vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). When a Rule 33 motion attacks the weight of the evidence, a trial court's authority to grant a new trial is "much broader" than when it decides a motion under Rule 29. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). Included within this broader discretion is the ability to weigh the credibility of witnesses. *See id*. However, the trial court should use such discretion "sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict." *See United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008) (reversing a district court that granted a new trial under Rule 33 for abuse of discretion where the evidence at trial did not weigh heavily against the verdict); *see also Arrington*, 757 F.2d at 1486.

**B. Analysis**

Count One of the Indictment alleges that, beginning on or about August 2019 and continuing to on or about February 2020, Thompson (along with Stump and Johnson) knowingly and intentionally conspired to commit several offenses against the United States, namely:

- Knowingly engaging in conduct involving the sale and purchase of plants (specifically, black walnut trees) with a market value in excess of $350 by knowingly selling and transporting the trees, with knowledge that the trees had been taken in violation of federal law;
- Stealing and purloining goods and property of the United States of a value exceeding $1,000 (specifically, black walnut trees); and
- Removing timber from public lands of the United States with intent to export or dispose of the same.

(Dkt. Nos. 3, 100, 101.) Before the jury could find Thompson guilty of that charge, the

government was required to prove, beyond a reasonable doubt, first, that two or more persons formed or entered into a conspiracy, understanding, or agreement to commit the underlying offenses;[3] second, that Thompson was a party to or member of that conspiracy; third, that Thompson joined the conspiracy involving the black walnut trees knowing of its objectives and intending to join together with at least one other conspirator to achieve the conspiracy's objectives; and fourth, that at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act to further the objective of the agreement. (Dkt. No. 100 at 28–29; *Singh*, 518 F.3d at 252.)

Thompson first argues that the evidence was insufficient to support a conviction on this charge because the government did not prove that he reached any agreement with either Stump or Johnson. The court rejects this assertion. It is true that "mere presence or association" with others who engage in certain conduct is "insufficient to prove knowing participation in a conspiracy. *United States v. Wilson*, 484 F.3d 267, 280 (4th Cir. 2007). But a reasonable juror could have concluded from several sources of evidence that defendant's involvement well exceeded mere presence. Special Agent James Willett testified that, in a March 2020 interview, Thompson admitted that he attempted to help Stump and Johnson remove timber from Bluestone in November 2019. (Willett Trial Tr., Dkt. No. 105, at 14:10–13.) Further, USACE Ranger John Drossart testified—and Thompson concedes in his brief—that on November 15, 2019, he saw Thompson at Bluestone with his co-defendants, attempting to haul a black walnut tree out of a ditch and onto the trailer attached to Stump's truck. (*See* Drossart Trial Tr., Dkt. No. 86, at 16:13–23; Def.'s Br., Dkt. No. 95, at 6 (conceding that the trial evidence, viewed in the light most favorable to the government, established that on November 15, 2019, Thompson and his

---

[3] The jury found Thompson guilty under Count One as to each object of the conspiracy. (Dkt. No. 101.)

co-defendants were each "assisting in the manipulation of the tree and cables affixed to it" at Bluestone).) Based on this testimony (which was corroborated by the photos Drossart took of the scene that day (Dkt. Nos. 96-6–96-14)), it would be far from unreasonable for a jury to conclude that there was a "tacit or mutual understanding" among the co-defendants that they would collectively remove the logs. *See United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997).

Thompson also argues that there was no evidence of an agreement to commit any unlawful objective. The record indicates otherwise. For one, the foundational task which the co-defendants gathered to accomplish—removing black walnut trees belonging to USACE from government property—is unlawful. Thus, it seems beyond debate that Thompson "join[ed] the conspiracy with an understanding of the unlawful nature thereof." *See United States v. Roberts*, 881 F.2d 95, 101 (4th Cir. 1989).

Moreover, substantial evidence supports the conclusion that the group's objective in removing the timber from Bluestone was that it would be sold, and that Thompson was sufficiently aware of that. The government presented proof that Richard Bowers (a log buyer) purchased black walnut logs from Stump on November 14, 2019 (the day before Drossart saw Thompson helping Stump remove a log from Bluestone), as well as on November 18 (the following Monday), 20, and 25, 2019, and on January 16 and 21, 2020. (Dkt. Nos. 96-20, 96-26–96-30; Willett Trial Tr. 5:14–7:14.) The government's expert—U.S. Forest Service silviculturist Mark Miller—testified to his analysis that the dimensions of a log Stump sold to Bowers on November 18 were not inconsistent with that of a stump from Bluestone located in the area where Drossart caught Thompson and his co-defendants on November 15. To boot, Drossart testified that when he returned to that area on November 18, the large log that

Thompson and his co-defendants had left beside River Road three days earlier was no longer there. (Drossart Trial Tr. 59:4–5.) And lastly, Special Agent Willett testified that, in his interview, Thompson admitted he had helped two other individuals remove a black walnut log from Bluestone a few months before the November 15 visit with Stump and Johnson, that after one of those tasks he was paid $300 for his work,[4] and that he had previously sold logs to Bowers using the name of his mother—Connie Thompson—on the receipts.[5] (Willett Trial Tr. 13:9–15:10.) Collectively, a reasonable juror could appraise this "'development and collocation of circumstances,'" *see Burgos*, 94 F.3d at 858 (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)), and infer that Thompson conspired with Stump and Johnson to remove black walnut trees from Bluestone with full awareness that the object of the conspiracy was the eventual sale of the timber.

In conspiracies, "there are 'big fish' and 'small fish,'" *see Burgos*, 94 F.3d at 858 (quoting *United States v. Mezzanatto*, 513 U.S. 196, 208 (1995)); it is not lost on the court that, at least based on this record, Thompson was the small fish and Stump was the big fish. It is also evident that the government's case rested in large part upon Thompson's actions in assisting Stump at Bluestone on one occasion and the logical inferences to be drawn therefrom. However,

---

[4] Thompson indicated to Willett that "[o]ne time . . . [t]hey brought me back $300" (Willett Trial Tr. 14:25–15:10) but could not remember with certainty for which of those two acts of assistance Thompson was paid.

[5] In his brief, defendant emphasized concerns about Special Agent Willett's credibility in testifying to the contents of this interview because he admitted at trial that he "failed to record the interview, did not take notes," that "his report contained inaccuracies" and that he had "previously engaged in misleading or uncandid conduct when he failed to accurately report a defendant's statement on a sworn criminal complaint" which "led to a dismissal of a criminal case before this Court." (Def.'s Br. 7 n.3.) Of course, as defendant concedes, the court may not consider the witness's credibility in the context of the motion for judgment of acquittal. But even as to the Rule 33 motion, the veracity of Willett's testimony was not so dubious as to warrant a new trial. No witness contradicted Willett's account of the interview, and the admissions he attributed to Thompson were consistent with other evidence in the case. Although Thompson no doubt impugned Willett's credibility as to the precision of the specific words he used in his report, Willett nevertheless testified that he was "very confident" in his memory that Thompson admitted to helping Stump and Johnson remove logs from Bluestone and to selling walnut logs using his mother's name. (Willett Trial Tr., Dkt. No. 105, at 31:13–21.)

in establishing a conspiracy, the Fourth Circuit "has never demanded too detailed a showing from the government." *United States v. Dennis*, 19 F.4th 656, 669 (4th Cir. 2021). Rather, the court has "affirmed conspiracy convictions where the government 'presented very little evidence about the relationship between [defendants] beyond traveling in the same car' and acknowledging some sort of prior relationship—without 'descri[ption of] the nature or duration of their relationship,' 'evidence of any prior conversations or meetings that might suggest the formation of a plan,' or 'testimony about the various roles different defendants played in the conspiracy.'" *Id.* (quoting *United States v. Moody*, 2 F.4th 180, 195 (4th Cir. 2021)). In that sense, this court is bound to do the same.

In sum, viewing the record in the light most favorable to the government, substantial evidence (both direct and circumstantial) supports the jury's finding beyond a reasonable doubt that Thompson entered a conspiracy with Stump and Johnson to remove timber from Bluestone that would then be sold for profit. Accordingly, Thompson is not entitled to judgment of acquittal,[6] and, for analogous reasons, the interest of justice does not require a new trial.

## II. CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that Thompson's motion for judgment of acquittal or, in the alternative, for a new trial (Dkt. No. 95) is DENIED.

---

[6] Thompson's final two arguments are also without merit. First, he insists that the court should be troubled by the jury's purportedly inconsistent verdict, but in the same breath acknowledges that an inconsistent verdict is not grounds for acquittal under Rule 29. (*See* Def.'s Br. 12 n.5 (citing cases).) Even still, Thompson never explains why the jury's verdict was inconsistent or, even if so, how that ought to affect the court's analysis (if at all). Then, Thompson claims that the court erred in not withholding the "dreaded *Pinkerton* instruction" (Def.'s Br. 12 n.6) because it "masked" other "issues associated with the lack of evidence" (*id.* 12). But the *Pinkerton* instruction had little to do with Thompson's conviction on Count One. Rather, the *Pinkerton* instruction governed only whether the jury could have convicted him on the substantive counts if it found him guilty of the underlying conspiracy. Here, the jury did the latter, but not the former; thus, *Pinkerton* liability was ultimately irrelevant. "[I]n the absence of any directly negating evidence," the court is "entitled . . . to presume that the jury heard, understood, and did follow the[] instructions." *United States v. Tipton*, 90 F.3d 861, 893 (4th Cir. 1996) (citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

The clerk is directed to provide a copy of this memorandum opinion and order to counsel of record.

Entered: April 26, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge